IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21–cv–03036–NYW–MDB

CHRISTOPHER PRYOR,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Magistrate Judge Maritza Dominguez Braswell**

Before the court is a "Motion for Leave to Designate Non-Parties at Fault Out of Time" filed by Defendant, United States ("Defendant"). (["Motion"], Doc. No. 30.) Plaintiff, Christopher Pryor, has responded in opposition to the Motion, and Defendant has replied. (["Response"], Doc. No. 34; ["Reply"], Doc. No. 37.) The Court heard oral argument on the Motion, on September 12, 2022. (*See* Doc. No. 43.) For the following reasons, it is **RECOMMENDED**[1] that the Motion be **DENIED**.

## BACKGROUND

This case arises out of an incident that occurred on or about October 2, 2018, when Plaintiff, a police officer with the Colorado Springs Police Department ("CSPD"), participated in

[1] The disposition of the present Motion is potentially dispositive of at least some of the parties' claims and defenses. Therefore, in an abundance of caution, the Court proceeds by Recommendation rather than by Order.

a training at the Urban Training Center ("UTC"), located at the Fort Carson military base. (Doc. No. 1 at ¶¶ 1-2, 10.) Plaintiff contends that Defendant "allows and invites" the CSPD to train at UTC, and that Defendant "is in control of the operation of the [UTC], deciding which agencies or non-military units may use the UTC, and is responsible for the safety of the individuals." (*Id.* at ¶¶ 8-9.) According to the Complaint, Plaintiff suffered serious bodily injuries when he stepped on an explosive device, which Defendant refers to as an improvised explosive device ("IED"), and which was allegedly buried and not visible to any member of the CSPD, and the device exploded. (*Id.* at ¶¶ 11-12, 23; Doc. No. 30 at 1.)

The two-year statute of limitations is relevant to this Motion and expired on October 2, 2020. Colo. Rev. Stat. § 13-80-102. Before that expiration date, on April 24, 2020, Plaintiff attempted to file an administrative claim with the U.S. Army and the Office of the Staff Judge Advocate on April 24, 2020. (Doc. No. 34-1.) On September 1, 2020, Plaintiff corrected his submission and filed the requisite Form 95 with the Fort Carson claims office. (Doc. No. 34-2.) On May 26, 2021, Plaintiff's claim was denied. (Doc. No. 34-3.) Plaintiff filed this action on November 11, 2021, and effected service on December 3, 2021. (Doc. No. 1; Doc. No. 6.) Defendant filed its first responsive pleading on February 7, 2022. (Doc. No. 13.) The Honorable Daniel Domenico granted Defendant's motion to dismiss one of the claims, and Defendant filed its Answer on June 16, 2022. (Doc. No. 24; Doc. No. 26.)

On July 18, 2022, Defendant filed the instant Motion. (Doc. No. 30.) The deadline to designate nonparties at fault was ninety days after Plaintiff filed this action, or February 9, 2022. *See* Colo. Rev. Stat. § 13-21-111.5(3)(b). Defendant explains that it only recently discovered the proposed nonparty at fault, Booz Allen Hamilton ("BHA"). Specifically, Defendant states that

"[w]hen discovery commenced, [it] was only aware of two Amy investigations, one completed by the Explosive Ordinance Division and the other by the Fort Carson Fire and Emergency Services." (Doc. No. 30 at 2.) Subsequently, Defendant discovered that the 10th Special Forces Group conducted a third investigation into the incident. (*Id.*) That investigation apparently found that "independent contractors from [BAH] were responsible for emplacing and removing the simulator IEDs used during the training." (*Id.*) Defendant claims that after it discovered this third report, it "sought and reviewed additional documents and spoke to relevant witnesses to ensure the accuracy of the information." (*Id.* at 2-3.)

Plaintiff argues that the 10th Special Force Group is part of the United States government and therefore part of the Defendant itself. (Doc. No. 34 at 2.) "The Defendant had total control over all its internal investigations along with all the sharing of any reports which came from the investigation. Any investigation by a unit of the U.S. Army is an investigation by the Defendant." (*Id.*) Plaintiff also argues that because the statute of limitations expired on October 2, 2020, allowing the untimely designation would prejudice Plaintiff because "he would not have the ability to bring in the non-party as a Defendant in this action." (Doc. No. 34 at 5.)

## LEGAL STANDARD

Plaintiff brings his claims pursuant to the Colorado Premises Liability Act ("CPLA") and the Federal Tort Claims Act ("FTCA"). (Doc. No. 1 at ¶ 4.) Colorado substantive law applies to this tort case. *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004).

Pursuant to Colo. Rev. Stat. § 13-21-111.5(3)(b), the "[n]egligence or fault of a nonparty may be considered . . . if the defending party gives notice that a nonparty was wholly or partially

at fault." The deadline for providing such notice is ninety days after plaintiff files their action. *Id.* However, a court can extend that deadline if it "determines that a longer period is necessary." *Id.*

In determining whether good cause exists to extend the ninety-day deadline, courts consider: "(1) whether the neglect was excusable; (2) whether the party making the late designation has alleged a meritorious defense or claim; and (3) whether relief from the deadline would be inconsistent with equitable considerations." *Traenker v. Capalbo*, Civ. A. No. 15-cv-00743-WYD-KMT, 2016 WL 503079, at *2 (D. Colo. Feb. 9, 2016) (citing *Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 83-84 (Colo. 2001)). Courts have significant discretion in determining whether there is good cause to extend the non-party at fault designation period. *See Redden*, 38 P.3d at 83-84 (applying abuse of discretion standard and affirming trial court's dismissal of non-party at fault designation).

**ANALYSIS**

Defendant argues that BAH is responsible for Plaintiff's injuries, and that despite Defendant's untimely designation, BAH should be designated a nonparty at fault. Defendant claims that any neglect associated with the delay is excusable because it was only after the 10th Special Forces Group investigation was uncovered that Defendant learned of the nonparty's culpability. (Doc. No. 30 at 5.) Defendant also contends that it has meritorious defenses, namely a jurisdictional defense under the independent contractor exception of the FTCA waiver of sovereign immunity. (*Id.*) Defendant also argues that "relief from the presumptive 90-day deadline is consistent with equitable considerations," because designating this nonparty will ensure that Defendant only pays its fair share of any alleged damages. (*Id.* at 6.)

Plaintiff does not refute Defendant's arguments concerning the second element—meritorious defense. Instead, Plaintiff focuses on the first and third elements—excusable neglect and equitable considerations. (*See generally* Doc. No. 34; Doc. No. 43.)

***Excusable Neglect***

Plaintiff argues that Defendant's failure to discover the 10th Special Forces Group investigation—and the related conclusions about the BAH's culpability—is inexcusable because Defendant's "own members including its JAG officers conducted multiple reviews into the Plaintiff's claim and the incident." (Doc. No. 34 at 5.) More specifically, Plaintiff argues that:

> Members of the 10th Special Forces Group are employees of the Defendant. The 10th Special Forces Group, per the Defendant's Motion, conducted an investigation of the incident. It was acting within its employment relationship. As its members--soldiers and officers of this unit knew of the involvement of the 3rd party and the investigation into the incident–then the U.S. Army and the Defendant knew of this information. The Defendant had knowledge of its employees who performed investigations of the incident and, therefore, it is knowledge to the Defendant itself. The Defendant knew there was a contract with the 3rd party which existed at the time of the incident.

(*Id.* at 3.) Defendant did not—either in its Reply or during oral argument on this Motion—dispute the assertion that Defendant employs members of the 10th Special Forces Group. Additionally, during oral argument, counsel for Defendant represented to the Court that the 10th Special Forces Group oversaw the training at issue. (Doc. No. 43.) In other words, it appears Defendant has some control over the 10th Special Forces Group, and that the 10th Special Forces Group had some control over the training, the contractors that assisted with the training, and the investigation of the training incident. Plaintiff therefore argues that Defendant's delay in discovering BAH's role was inexcusable. (Doc. No. 34 at 2-5.)

Defendant does not explain why it failed to uncover the 10th Special Forces Group investigation sooner. Instead, Defendant argues that the goal of the administrative claims process is efficiency not completeness, and that Defendant was not required to gather the investigative information earlier. (Doc. No. 37 at 6.) The Court agrees that the government is not required to—as defense counsel stated during oral argument—"turn over every stone" during the administrative claims process. However, if every piece of evidence is a "stone," the investigation that Defendant itself conducted into the incident is a boulder that appears to have been missed. Defendant's arguments about efficiency may be persuasive where the information at issue is not under a party's direct control. Here, however, the investigation conducted by the 10th Special Forces Group should have been one of the first pieces of information Defendant gathered when it learned about Plaintiff's claims. Perhaps someone simply overlooked the 10th Special Forces Group investigation, or perhaps the records of the investigation were misfiled or temporarily misplaced, either way the Court is left to guess and cannot—from anything submitted to the Court—find a basis for determining that Defendant's delay in discovering the 10th Special Forces Group investigation, or the involvement of third party BAH, was the result of excusable neglect. *See, e.g.*, *Redden*, 38 P.3d at 84 (finding that the movant "made no effort to justify the late filing"); *High Impact, Inc. v. Markey*, Civ. A. No. 17-cv-02344-PAB-NYW, 2018 WL 11183579, at *3 (D. Colo. Jan. 10, 2018) (finding that movant "failed to demonstrate that their delay in designating the nonparty at fault is excusable"); *Hubbell v. Carney Bros. Constr.*, Civ. A. No. 05–cv–00026–CMA–KLM, 2010 WL 2428984, at *3 (D. Colo. May 26, 2010) (finding that the movant had "not provided a credible reason for the untimely designation").

***Equitable Considerations***

Plaintiff also argues prejudice because the applicable statute of limitations expired long ago and will now preclude claims against nonparty, BAH. (Doc. No. 34 at 5.) Defendant argues that Plaintiff was in no better position at the start of litigation because the statute of limitations had already expired by the time Plaintiff filed his claims in November 2021. (Doc. No. 36 at 8.) Defendant also argues that "courts often grant nonparty designations even where plaintiff cannot recover from the nonparty." (Doc. No. 37 at 8 (citing *Fourhorn v. City & Cnty. of Denver*, Civ. A. No. 08–cv–01693–MSK–KLM, 2008 WL 5423349, at *3 (D. Colo. Dec. 30, 2008); *Pedge v. RM Holdings, Inc.*, 75 P.3d 1126, 1128 (Colo. App. 2002)).)

The Court is not persuaded by Defendant's arguments. First, the decisions Defendant cites for the proposition that courts allow nonparty designations even when a plaintiff cannot recover, concern nonparty individuals over which defendants had no control. In both *Fourhorn*, and *Pedge*, the nonparty designees committed the alleged physical assault at issue and were not under the care or control of the named defendant when they committed the assault. *Fourhorn*, 2008 WL 5423349, at *1; *Pedge*, 75 P.3d at 1127. The equities associated with both *Fourhorn*, and *Pedge*, appear to weigh heavily in favor of defendants. That is not the case here. Defendant seeks to designate a nonparty contractor who operated pursuant to a contract with Defendant and over whom Defendant presumably exercised some control.[2] Any prejudice Plaintiff might suffer

[2] The use of the word "control" does not signal a recommendation or finding with respect to the contract between Defendant and BAH. Whether or not BAH was under the direct control of Defendant, is not an issue before the Court and the Court does not intend to—by reference to "control" in the ordinary sense of the word—address any legal issues implicated by the relationship between BAH and Defendant.

as a result of this late designation is directly tied to Defendant's delayed discovery of the nonparty's culpability.

Second, while the Court agrees with Defendant that Plaintiff would have been in no better position if the designation occurred sooner—even as early as the day Plaintiff filed his Complaint—the Court cannot ignore the fact that Plaintiff attempted to file a claim in April 2020, approximately five months before the statute of limitations expired. Although Plaintiff's first notice was defective, it at least alerted Defendant to the possibility of a claim. (Doc. No. 34-1.) Additionally, on September 1, 2020—approximately one month before the statute of limitations expired—Plaintiff submitted a proper claim form to Defendant. (Doc. No. 34-2.)

Third, while Defendant seeks to use the statute of limitations in its favor, that argument favors Plaintiff. Defendant hosted a training, an explosion occurred, and people were injured. Recognizing that any potential claimants would have two full years to file a claim, Defendant should have maintained its files, records, and any investigation findings in a manner that was organized and readily accessible during that two-year period. And even if Defendant had not gathered all relevant information and investigative findings during this two-year period, then certainly by November 2021—the month Plaintiff filed this action and seven months after Plaintiff first informed Defendant about a potential claim—Defendant should have already uncovered its own investigation into the incident.

The Court also considers the impact on Defendant if the Court were to deny the Motion. Defendant argues that it should not "be made financially responsible for any fault that is not the defendant's own." (Doc. No. 37 at 4 (citing *Paris ex rel. Paris v. Dance*, 194 P.3d 404, 408 (Colo. App. 2008).) In its briefing and during oral argument, Defendant relies on legislative

intent and *Blatchley v. St. Anthony Summit Med. Ctr.,* 822 F. App'x 663, 669 (10th Cir. 2020), to argue that denial of this Motion would run counter to the statute's apportionment requirements. (*Id.* at 4-5.)

However, even if Defendant is not allowed to designate BAH as a nonparty at fault, Defendant can still assert a jurisdictional defense based on BAH's involvement. (*See* Doc. No. 30 at 5-6 ("At this time, the United States anticipates filing a dispositive motion asserting, among other things, a jurisdictional defense under the independent contractor exception to the FTCA's waiver of sovereign immunity…. And *even if* Plaintiff is able to defeat this dispositive motion, the discovery to date suggests that the evidence will show that the independent contractor who emplaced and failed to recover the simulator IED is at least partially, if not wholly, at fault for Plaintiff's injuries.") (emphasis added).) Moreover, Defendant has not presented any arguments to the Court, either through briefing or oral argument, that indicate it cannot recover from BAH through, for example, third party claims or separate contractual indemnification claims.

Additionally, *Blatchley* is a medical malpractice case that concerns double recovery. 822 F. App'x at 664. There, the plaintiff alleged permanent injuries arising out of the negligent care he received at a medical facility. *Id.* Ultimately, the plaintiff settled with the orthopedic surgeons and physician assistants, but did not settle with the medical facility. *Id.* The facility filed a nonparty designation stating that the surgeons and physician assistants were at least partially at fault. The district court struck the designation and did not instruct the jury on comparative fault. *Id.* The Tenth Circuit reversed the decision finding that striking the designation and refusing to instruct the jury on comparative fault essentially allowed the plaintiff to recover twice. *Id.*

Double recovery is not a concern here. Plaintiff has not, and—in light of his position on the statute of limitations—cannot, seek recovery from BAH.

For those reasons, the Court finds that the equities weigh in favor of Plaintiff. Defendant is correct that the Colorado legislature has determined that defendants should only be liable for their share of damages. (Doc. No. 30 at 6.) However, untimely nonparty designations trigger a multi-faceted inquiry, and a court should consider more than just the possible apportionment of fault at trial. The Court should also consider the reasons for the delay, and the equities associated with the late designation. *See Traenker*, 2016 WL 503079, at *2 (noting that when courts analyze whether there is good cause to extend the presumptive ninety-day window, they assess the basis for the neglect, consider whether there are meritorious defenses, and account for any equitable considerations).

In light of the potential prejudice to Plaintiff if the Motion is allowed, and Defendant's ability to assert its defenses regardless of the nonparty designation, the equitable considerations weigh in favor of Plaintiff. Additionally, because Defendant has not offered any basis for the Court to conclude that Defendant's delay was the result of excusable neglect, the Court finds that Defendant's untimely designation of a nonparty at fault should be rejected.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** that the "Motion for Leave to Designate Non-Parties at Fault Out of

Time" (Doc. No. 30) be **DENIED**.

**ADVISEMENT TO THE PARTIES**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 21st day of September, 2022.

**BY THE COURT:**

Maritza Dominguez Braswell
United States Magistrate Judge